STATE OF NORTH CAROLINA v. JERRY WAYNE BALLARD

No. COA96-1153

(Filed 2 September 1997)

**1. Evidence and Witnesses § 90 (NCI4th)— second-degree murder—intoxicated operation of motor vehicle—statements to psychologists—not admissible**

In a second-degree murder prosecution which resulted from defendant's operation of a motor vehicle while he was intoxicated, the trial court did not abuse its discretion by excluding defendant's statements to a psychologist where the court allowed the psychologist to give his opinion of defendant's state of mind at the time of the accident, but reasoned that the helpfulness of the hearsay testimony was outweighed by the prejudice to the State in not being able to cross-examine defendant.

**2. Homicide § 523 (NCI4th)— second-degree murder— instruction on malice—guilty pleas to other offenses—considered on malice**

There was no plain error where the court instructed the jury in a second-degree murder trial arising from a car accident that it could consider defendant's guilty pleas to driving with a revoked license, no insurance, a fictitious tag and unsafe tires arising from the same accident as evidence of malice where defendant did not limit the use of the stipulated evidence and did not object to the instructions at trial.

**3. Criminal Law § 1095 (NCI4th)— automobile accident— intoxication—second-degree murder—aggravating factor— risk of death by device hazardous to more than one person**

The trial court did not err in a second-degree murder prosecution arising from an automobile accident by finding as an

aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a device which would normally be hazardous to the lives of more than one person. Although defendant contended that his use of a motor vehicle could not be used in aggravation because that use provided the inference of malice necessary for second-degree murder, it is the reckless and wanton nature of the act committed which leads to the inference of malice while the aggravating factor is supported by the use of a device normally hazardous to the lives of more than one person to create a risk of death to more than one person.

**4. Criminal Law § 1095 (NCI4th Rev.)— second-degree murder—automobile accident—aggravating factor—position of trust and confidence**

There was sufficient evidence of the aggravating factor that defendant took advantage of a position of trust or confidence to commit the offense in a second-degree murder prosecution arising from the death of a twelve-year-old in a car accident while defendant was intoxicated. Even assuming that defendant's contention that the court's finding of a relationship of trust and confidence with the victim's mother and family is irrelevant and that the existence of the aggravating factor must be premised on a relationship of trust between defendant and the victim, that relationship existed here. Defendant also argued that any trust or confidence the child placed in him did not facilitate the offense in any way, but the fact that the child was in the car with defendant from the outset was predicated on his close relationship with defendant. Defendant's total disregard for the welfare of the child relates to his character and conduct and was reasonably related to the purposes of sentencing.

**5. Criminal Law § 1097 (NCI4th Rev.)— second-degree murder—mitigating factors—acknowledgment of wrongdoing**

The trial court did not err in a second-degree murder prosecution arising from an automobile accident by failing to find as a statutory mitigating factor that defendant voluntarily acknowledged wrongdoing where defendant was agitated and uncooperative with medical personnel at the accident scene; defendant repeatedly yelled that he wanted to get out of the police car at the accident scene; the first officer at the accident scene testified that he felt that defendant was going to run from him; defendant provided the necessary information to complete an accident

STATE v. BALLARD

[127 N.C. App. 316 (1997)]

report and indicated that he had not meant to harm the child but only wanted to scare the child's mother; and defendant failed to submit to a test to determine his blood alcohol concentration.

**6. Criminal Law § 1097 (NCI4th Rev.)— second-degree murder—mitigating factors—mental or physical condition—alcoholism alone insufficient**

The trial court did not abuse its discretion in a prosecution for second-degree murder resulting from defendant's operation of his vehicle while he was intoxicated by failing to find as a statutory mitigating factor that defendant suffered from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense. The existence of a condition such as alcoholism, without more, does not mandate consideration of this mitigating factor.

Judge MARTIN (John C) concurring in part and dissenting in part.

Appeal by defendant from judgment entered 5 June 1996 by Judge Marcus Johnson in Buncombe County Superior Court. Heard in the Court of Appeals 15 May 1997.

*Michael F. Easley, Attorney General, by Reuben F. Young, Associate Attorney General, for the State.*

*Belser & Parke, P.A., by David G. Belser, for defendant-appellant.*

WYNN, Judge.

A grand jury indicted defendant Jerry Wayne Ballard for, and he subsequently pled guilty to, felony driving while impaired, reckless driving to endanger, driving while license revoked, unsafe tires, fictitious registration card/tag, and operating a vehicle with no insurance. A grand jury also indicted defendant for second degree murder and he was tried by a jury in Buncombe County.

At that trial, the State's evidence tended to show the following: On 15 May 1995, defendant was seen with eleven year old Billy Joe Moore ("B.J.") at a convenience store in Weaverville, N.C. Deborah Moore, B.J.'s mother and defendant's ex-girlfriend, had planned for B.J. to stay with his grandmother that day. However, during the course of the day, B.J. called his mother from the convenience store to say he was not with his grandmother. Defendant came on the line

and argued with and threatened Ms. Moore. Ms. Moore, aware that defendant was a heavy drinker and knowing from his slurred speech on the telephone that defendant was under the influence, repeatedly asked defendant to bring B.J. home. Following this telephone conversation, Ms. Moore called the police and reported that B.J. had been abducted and informed them of his location.

Defendant left the store with B.J. in his car at approximately 7:00 p.m. Shortly thereafter, Buncombe County Sheriff Deputy Jerry Owenby, Jr. spotted defendant's car and turned around to follow him in his patrol car. Defendant accelerated, passing a car on a double solid line into oncoming traffic, and sped off down the road. Defendant, with Deputy Sheriff Owenby in pursuit, ran a stop sign and collided with a utility pole about one mile from where the initial pursuit began. B.J. suffered severe head trauma and an amputated leg and died on the scene. Defendant told the investigating officer that he was driving the car but that he hadn't meant to wreck it. He asked about B.J. and said that he had not wanted to hurt B.J. but just wanted to scare B.J.'s mother. Police found numerous empty beer cans and two bottles of Wild Irish Rose wine in defendant's car. Defendant was admitted to the hospital where he refused a request for a blood sample and breathalyzer test. However, defendant stipulated that his blood alcohol level at a relevant time after the accident was .18.

Defendant presented the testimony of John Clement, an expert in psychology, who stated that defendant suffered from chronic alcoholism and poly-substance abuse and was suffering from drug and alcohol addiction and intoxication at the time of the accident. He further stated that defendant's state of mind immediately preceding the accident was frightened and panicked.

At the conclusion of the trial, the jury found defendant guilty of second degree murder. The trial court then determined that defendant had a prior record level of II and made findings of aggravating and mitigating factors. It found as factors in aggravation that "defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person," and "defendant took advantage of a position of trust or confidence to commit the offense," and found as a factor in mitigation that "defendant has a support system in the community." After concluding that the aggravating factors outweighed the mitigating factors, the court imposed an aggravated

sentence of 163 to 205 months. Defendant appeals from the judgment and sentence imposed.

The defendant raises several issues on appeal: (I) Whether the trial court erred by refusing to allow the expert psychologist to testify as to what defendant told him regarding his state of mind at the time of the offense; (II) Whether the trial court committed plain error by instructing the jury that it could consider the defendant's guilty pleas to driving while license revoked, no insurance, fictitious tag and unsafe tires as evidence of malice; (III) Whether the trial court erred in finding the two aggravating factors and by failing to find two additional mitigating factors. We conclude that the defendant received a fair trial free from prejudicial error.

I.

[1] Defendant first assigns as error the trial court's refusal to allow his expert psychologist to testify as to what the defendant told him regarding his state of mind at the time of the offense. He argues that defendant's statements to the psychologist formed part of the basis for his expert opinion and as such, should have been allowed into evidence. We disagree.

Under N.C.R. of Evid. 705, an expert may testify regarding his opinion and the reasons therefor. However, this "does not . . . make the bases for an expert's opinion automatically admissible." *State v. Baldwin*, 330 N.C. 446, 456, 412 S.E.2d 31, 37 (1992). The trial court has the authority to " 'exercise reasonable control over the mode and order' of interrogation and presentation of the evidence," and has the discretion to exclude relevant but prejudicial evidence. *Id.* (quoting N.C.R. Evid. 611). Such an exercise of discretion will be reversed "only upon a showing that [the trial court's] ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *Id.* (quoting *State v. Penley*, 318 N.C. 30, 41, 347 S.E.2d 783, 789 (1986)).

In the instant case, the trial court allowed the expert to testify as to his opinion regarding defendant's state of mind at the time of the accident, but excluded the expert's hearsay testimony as to defendant's statements to him explaining his version of the events. The trial court reasoned:

> [T]he defendant's exculpatory testimony or statements as to this particular event are prejudicial to the State, and the prejudicial effect at most would be only relevant as a basis for this witness's

conclusions. And to the extent it might be helpful to the jury in so doing, it's outweighed by the prejudice to the State in being unable to cross-examine the defendant on those statements.

After examining the record, we find that the trial court did not abuse its discretion by excluding defendant's statements to the psychologist. *See Baldwin*, 330 N.C. at 457, 412 S.E.2d at 38.

## II.

[2] Defendant next assigns as error a portion of the trial court's jury instructions. He contends that the trial court committed plain error by instructing the jury that it could consider the defendant's guilty pleas to driving while license revoked, no insurance, fictitious tag and unsafe tires as evidence of malice. We disagree.

Defendant stipulated that he pled guilty on 3 June 1996 to felony driving while impaired, driving while license revoked, reckless driving and endangerment to property and persons, operating a motor vehicle with unsafe tires, creating a needless hazard, having a fictitious registration plate, knowing the same to be stolen, and operating a motor vehicle without having financial responsibility or insurance. He further stipulated that his guilty pleas were to crimes which arose out of the death of B.J. Moore on 19 May 1995. Defendant did not limit the use of the stipulated evidence in any way. At the close of all the evidence, the trial court's instructions to the jury included the following:

> Now, evidence has been received in this case which tends to show that the defendant, Mr. Ballard, was convicted of three separate counts of driving while impaired prior to May 19th of 1995, and that he plead "guilty" to driving while license revoked, no insurance, fictitious tag, and pled "responsible" to unsafe tires on June 3rd—on or about June 3rd of this year. Now, this evidence was received solely for the purpose of showing that the defendant, Mr. Ballard, at the time of the subject accident on or about May 19, 1995, had the malice which is a necessary element of second-degree murder which is charged in this case. If you believe this evidence, you may consider it, but only for the limited purpose for which it was received. It is for you, the jury to determine whether this evidence, in fact, shows malice, whether or not it, in fact, shows malice.

Defendant made no objection to this instruction at the time it was given and at the close of all the instructions responded to the judge's

inquiry of whether there were any objections saying "No objections to any of the instructions." Having examined the record and the instructions in their entirety, we cannot say that any alleged defect in the instructions was *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 378, 378 (quoting *United States v. McCaskill,* 676 F. 2d 995, 1002 (4th Cir. 1982). Therefore, we hold that the instructions at issue did not constitute plain error.

### III.

Finally, defendant assigns as error the trial court's finding of two aggravating factors, its failure to find two additional mitigating factors, and the sentence imposed based on these factors.

[3] Defendant first contends that the trial court erred by finding as an aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a device which would normally be hazardous to the lives of more than one person. We disagree.

In *State v. Garcia-Lorenzo,* 110 N.C. App. 319, 430 S.E.2d 290 (1993), we held that, where defendant was legally intoxicated and driving recklessly, the automobile constituted a device knowingly used by defendant which created a great risk of death to more than one person. Moreover, in *State v. McBride,* 118 N.C. App. 316, 454 S.E.2d 840 (1995), we upheld the aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a device which would normally be hazardous to the lives of more than one person when defendant was sentenced for involuntary manslaughter in connection with an automobile accident.

Nonetheless, defendant argues that his reckless use of a motor vehicle provided the necessary inference of malice, an essential element of the offense of second degree murder, and therefore, cannot be used as a factor in aggravation. In support of his position, defendant cites *State v. Blackwelder,* 309 N.C. 410, 306 S.E.2d 783 (1983) in which our Supreme Court stated:

> When the facts justify the giving of the instruction of the inference of malice arising as a matter of law from the use of a deadly weapon and it is in fact given, or when it could have been given had defendant not entered a plea of guilty, evidence of the use of a deadly weapon is deemed necessary to prove the element of

malice for purposes of precluding its use as an aggravating factor at sentencing.

*Id.* at 417, 306 S.E.3d at 788. However, we find the instant case distinguishable from *Blackwelder.*

In the case *sub judice*, no deadly weapon was employed and no inference of malice arises as a matter of law. Instead, the trial court instructed the jury with regard to the element of malice: "Malice is a necessary element which distinguishes second-degree murder from manslaughter. Malice arises when an act which is done so recklessly and wantonly as to manifest a mind utterly without regard to human life and social duty, and deliberately bent upon mischief." Thus, it is the reckless and wanton nature of the act committed which leads to the inference of malice. On the other hand, it is the use of a device, normally hazardous to the lives of more than one person, to create a risk of death to more than one person which supports the aggravating factor at issue. Therefore, we hold that the defendant's operation of the motor vehicle did not constitute one of the elements of second degree murder. Accordingly, we affirm the trial court's finding as an aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a device which would normally be hazardous to the lives of more than one person.

**[4]** Defendant next contends that the trial court erred in finding as an aggravating factor that the defendant took advantage of a position of trust or confidence to commit the offense. We disagree.

The trial court stated:

I find that the defendant took advantage of a position of trust or confidence to commit the offense. That is, it would plainly appear that but for the position of trust and confidence that he held with the mother and family of this young boy, he would not have had the opportunity to gain custody of the child, so I find that as an aggravating factor.

Defendant first argues that the trial court's finding of fact that he had a relationship of trust and confidence with the victim's mother and family is irrelevant. Defendant cites *State v. Farlow*, 336 N.C. 534, 444 S.E.2d 913 (1994), in support of his contention that the issue should have been whether he had such a relationship *with the victim. Id.* at 542, 444 S.E.2d at 918 ("The existence of this aggravating factor is premised on a relationship of trust between defendant and the victim which causes the victim to rely upon defendant.").

Assuming for the sake of argument that defendant's contention is correct, we would nonetheless find that a relationship of trust did exist between defendant and the victim. The record shows that defendant had a live-in relationship with Ms. Moore and her family, including her son B.J., for approximately a year, and that defendant developed a close relationship with the child. Ms. Moore testified that defendant still had contact with her son after their breakup, and defendant's own mother testified that defendant and B.J. were often together, playing, wrestling and talking.

Defendant also contends that even if a relationship of trust did exist between he and B.J., any trust or confidence the child placed in him did not facilitate the offense in any way. We disagree.

The law is well-settled that this aggravating factor may be grounded in the child's dependence on the defendant. *See State v. Holden*, 321 N.C. 689, 365 S.E.2d 626 (1988); *State v. Daniel*, 319 N.C. 308, 354 S.E.2d 216 (1987). In *Daniel*, the Supreme Court upheld a finding that the defendant took advantage of a position of trust or confidence with her newborn child when she murdered the child. The Court held that this aggravating factor does not require evidence of a conscious mental process on the part of the infant victim:

> Such a finding depends instead upon the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other. A relationship of trust or confidence existed because defendant was the child's mother and because she was singularly responsible for its welfare. The abuse of her parental role relates to defendant's character and conduct and was reasonably related to the purposes of sentencing.

319 N.C. at 311, 354 S.E.2d at 218.

The defendant in this case contends that the crime would have been committed in the same way even if the child had been a total stranger. We disagree. The fact that the child was in the car with defendant from the outset was predicated on his close relationship with defendant. Defendant knew that the boy looked up to him as a father-figure, a protector; yet he still chose to get in the car with the child even though he was very drunk and then he drove the car in such a reckless manner that it crashed, killing the child. In the commission of this crime, the defendant's total disregard for the welfare of this child (who he was responsible for) relates, as in *Daniel*, "to defendant's character and conduct and was reasonably related to the

purposes of sentencing." Accordingly, we find the evidence sufficient to support this finding in aggravation.

[5] Defendant next contends that the trial court erred in failing to find as a statutory mitigating factor that the defendant voluntarily acknowledged wrongdoing in connection with the offense. Again, we disagree.

Our examination of the record reveals that at the accident scene defendant was agitated and uncooperative with medical personnel. He repeatedly yelled that he wanted to get out of the car and Deputy Sheriff Jerry Dean Owenby, Jr., the first officer at the accident scene, testified that he felt like the defendant was going to run from him. Trooper Neil Denman with the North Carolina Highway Patrol spoke with defendant in the hospital as part of his investigation of the accident. Trooper Denman testified that defendant gave him the necessary information to complete the accident report, i.e., name, address, date of birth, etc., and told him that he didn't mean to wreck the car and harm the child and that he just wanted to take the child to scare the mother. Defendant refused to give a blood sample for chemical testing to determine his blood alcohol concentration. We hold that, under these circumstances, the trial court did not err in failing to find as a mitigating factor that defendant voluntarily acknowledged wrongdoing in connection with the offense.

[6] Finally, the defendant contends that the trial court erred in failing to find as a statutory mitigating factor that the defendant was suffering from a mental or physical condition that was insufficient to constitute a defense, but significantly reduced his culpability for the offense. We disagree.

In *State v. Salters*, 65 N.C. App. 31, 308 S.E.2d 512 (1983), *disc. review denied*, 310 N.C. 479, 312 S.E.2d 889 (1984), we said:

> While a mental or physical condition, such as alcoholism, may be capable of reducing a defendant's culpability for an offense, evidence that the condition exists, without more, does not mandate consideration as a mitigating factor. Defendant has the burden of proof with respect to any alleged mitigating factors.

*Id.* at 36, 308 S.E.2d at 516 (citations omitted). After examining the record, we hold that the trial court did not abuse its discretion in failing to find this mitigating factor under the circumstances of the instant case.

For the foregoing reasons, we hold that the defendant received a fair trial, free from prejudicial error.

No prejudicial error.

Judge LEWIS concurs.

Judge MARTIN, John C., concurs in part, and dissents in part.

Judge John C. MARTIN concurring in part and dissenting in part.

I concur fully with the majority in finding no prejudicial error in defendant's trial. I also concur in those portions of the majority opinion which affirm the trial court's finding, in aggravation of punishment, of the aggravating factor contained in G.S. § 15A-1340.16(d)(8), and the trial court's refusal to find, in mitigation, the mitigating factors contained in G.S. § 15A-1340.16(e)(3) and G.S. § 15A-1340.16(e)(15). However, I must respectfully dissent from that portion of the majority opinion which affirms the trial court's finding of the aggravating factor contained in G.S. § 15A-1340.16(d)(15) that "defendant took advantage of a position of trust or confidence to commit the offense."

The State has the burden to prove by a preponderance of the evidence the existence of factors in aggravation of punishment. N.C. Gen. Stat. § 15A-1340.16(a); *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991). Here, the trial court found:

> I find that the defendant took advantage of a position of trust or confidence to commit the offense. That is, it would plainly appear that but for the position of trust and confidence that he held with the mother and family of this young boy, he would not have had the opportunity to gain custody of the child, so I find that as an aggravating factor.

However, the record contains no evidence as to how the child came to be in the company of defendant on the date of the offense, and therefore, does not support the trial court's finding that defendant gained custody of the victim by reason of a relationship between himself and the child's mother and family. Moreover, the majority's reasoning that "[t]he fact that the child was in the car with defendant from the outset was predicated on his close relationship with defend-

ant" is purely speculative; there was no evidence to show whether the child's presence in defendant's car was voluntary or involuntary.

Where a trial court finds an improper aggravating factor, it cannot properly balance the aggravating and mitigating factors; in such instances the case must be remanded for resentencing. *State v. Whitley*, 111 N.C. App. 916, 433 S.E.2d 826 (1993). Therefore, I vote to find no prejudicial error in defendant's trial, but to remand the case to the Superior Court of Buncombe County for a new sentencing hearing.