COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Alston and Senior Judge Coleman


KIMBERLY ADKINS

                                                    MEMORANDUM OPINION*
v.       Record No. 2277-09-4                            PER CURIAM
                                                        APRIL 13, 2010
WINCHESTER DEPARTMENT OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
                             John R. Prosser, Judge

              (Mark A. Vann; Vann & Vann, P.L.C., on brief), for appellant.

              (Neal T. Knudsen; Law Office of Neal T. Knudsen, on brief), for
              appellee.

              (Timothy M. Mayfield; Adams & Jones, P.L.C., on brief), Guardian
              *ad litem* for the minor child.


       Kimberly Adkins (mother) appeals the decision of the circuit court terminating her parental

rights to her child, P.A.  She contends it was not "in the best interest of the child . . . to terminate

[her] parental rights and enter a foster care plan of adoption."  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  See Rule 5A:27.

                                          Background

       On appeal, we view the evidence and all the reasonable inferences in the light most

favorable to appellee as the party prevailing below.  McGuire v. McGuire, 10 Va. App. 248, 250,

391 S.E.2d 344, 346 (1990).  So viewed, the evidence established that mother gave birth to P.A.

on September 25, 2007.

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the time, mother was a psychiatric patient at Western State Hospital. The father, to whom mother is not married, was a psychiatric patient, too. Based on mother's erratic behavior before and during childbirth due to mother's refusal to take her medications, the Winchester Department of Social Services (WDSS) immediately removed P.A. from mother and placed her in foster care on September 26, 2007.

Evidence showed that mother suffers from chronic mental illness, including, "schizoaffective disorder, bipolar type, with psychosis," and requires ongoing medication. Mother has a long history of denying the severity of her mental condition and refusing to take required medications, and she has been hospitalized at mental institutions fourteen times, including seven times since P.A.'s birth. Mother has spent more than half of P.A.'s life in a mental institution.

WDSS tried to place P.A. with the maternal grandmother but was advised that the grandmother was unable to assume custody of P.A. In November 2007, WDSS placed then two-month-old P.A. with her paternal aunt, Missy Compher.[1] P.A. has remained with Compher and her husband since that time. The Comphers want to adopt P.A., and P.A.'s paternal grandparents care for P.A. during the day while the Comphers work. Missy Compher testified that a psychiatrist evaluated P.A. and reported she is mentally and cognitively healthy and has no problems.

Mother has never seen or visited P.A., who was twenty-one months old at the time of the hearing. Mother conceded her mental condition is permanent and she will always need medications to keep her condition stabilized; however, she acknowledged that she has discretion to refuse to take her medications. P.A.'s father was a patient at Western State when the child

---

[1] Although the transcript from the proceedings in circuit court refers to the Comphers as the "Confers," WDSS's records indicate that P.A. was placed with the "Comphers."

was conceived, and mother and father are not married and have no relationship. At the time of the hearing, mother was pregnant with another child and lived in a small efficiency apartment, which she conceded was too small to accommodate P.A. and the new baby. Mother has no permanent job prospects, and her mother handles her finances. After mother's discharge from Western State on July 28, 2008, she was scheduled to visit P.A.; however, mother canceled the visit. Mother testified she "was overwhelmed" because her boss was harassing her, she was involved in a bad relationship, and her medicine dosage was too high.

Nell Tharp is a psychiatric nurse practitioner at Western State and cares for chronically mentally ill patients. Tharp testified that mother's repeated hospitalizations were due to relapses of her schizoaffective disorder caused by her inability to adhere to and take her scheduled medications.

Qualified mental health professional Keely Adams was mother's primary care worker beginning in the summer of 2008 when mother moved to Winchester from Lynchburg. She helped mother restabilize after her July 28, 2008 discharge. Adams recalled a period during that time when mother stopped taking her medications and "stopped taking care of herself physically." Adams reported that, at one point, mother "refused to meet with staff," she exhibited "a lot more conflict in her relationships," and she became angry when pressed to take her medications.

P.A.'s guardian *ad litem* argued that mother has been given numerous opportunities in the past to comply with her medicine regimen and visit P.A., but she has repeatedly been unable or unwilling to appreciate her condition, remain compliant with her medications, and avoid returning to the mental hospital. The guardian further opined that it would be stressful for mother to attempt to care for P.A. and her unborn child, and it would be in P.A.'s best interests

"not to be involved with the Court system indefinitely," a situation that would likely result should the trial court continue the matter.

After hearing the evidence, the trial court found that WDSS established by clear and convincing evidence it was in "the best interest and the welfare" of P.A. to terminate mother's residual parental rights under Code § 16.1-283(B) and 16.1-283(C). It found that mother has a long history of continually relapsing after showing improvement, and "it's not reasonably likely that this matter is going to be remedied [or] that this condition is going to improve."

Discussion

Mother argues that the main obstacle preventing her from caring for P.A. was her noncompliance with taking her medications and that monthly injections have made compliance easier. Mother argues she was compliant and productive during the five-month period from her February 2009 release until the July 2009 termination hearing.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Where the trial judge hears the evidence *ore tenus,* his decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

A termination of rights pursuant to Code § 16.1-283(B) requires the trial court to find by clear and convincing evidence that termination was in the child's best interests and

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

Pursuant to Code § 16.1-283(B)(2)(a), proof that the parent is suffering from a "mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development" "shall constitute prima facie evidence of the conditions set forth in [Code § 16.1-283(B)(2)]."

Termination pursuant to Code § 16.1-283(C)(2) requires proof that the parent,

> without good cause, ha[s] been unwilling or unable within a reasonable period of time *not to exceed twelve months from the date the child was placed in foster care* to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies.

(Emphasis added.)

In determining what is in the best interests of a child,

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he [or she] has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (citation omitted).

"Virginia law recognizes the 'maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past.'" Id. at 267-68, 616 S.E.2d at 770 (quoting Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003)). In this regard, mother's "'past actions . . . over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

P.A. was removed as soon as she was born, and mother has never met or visited her. Therefore, at the time of the hearing, mother and P.A. were virtual strangers and remain that way. In addition to there being no bond between mother and P.A., the evidence also showed that mother had no permanent employment, her mother handled her finances, mother resided in an efficiency apartment, which even she conceded was too small, and all while mother was expecting another child. Meanwhile, P.A. has thrived with her foster parents, her paternal aunt and the aunt's husband, with whom she has lived and bonded for almost two years. Under the circumstances, it was in P.A.'s best interest to terminate mother's parental rights.

Further, for various reasons, mother has a long history of refusing or failing to take her required medications. She had twenty-one months from the time of removal until the hearing in the trial court to remedy the problems that caused P.A. to be removed, namely, to comply with her medication regimen and avoid relapses. However, she was unwilling or unable to do so within twelve months or a reasonable amount of time thereafter. She repeatedly made unilateral decisions to avoid taking her required medications, resulting in her having to be hospitalized in a mental institution, and she has a history of denying the seriousness of her mental condition and blaming her behavior on improper dosages or outside influences. The evidence also established that mother has discretion in deciding whether to take her medications, be it pills or injections.

The evidence failed to show that mother can be compliant with medications so as to safely and responsibly care for herself and P.A.

WDSS presented clear and convincing evidence to support the trial court's decision. Accordingly, the trial court did not err in terminating mother's parental rights and finding such termination in P.A.'s best interests. The decision of the trial court is affirmed.

<u>Affirmed.</u>