COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Beales and Senior Judge Annunziata


BRANDY McCOY, SOMETIMES KNOWN AS
  BRANDI McCOY
                                                          MEMORANDUM OPINION[*]
v.         Record No. 1264-10-3                                  PER CURIAM
                                                               DECEMBER 7, 2010
GRAYSON COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                     FROM THE CIRCUIT COURT OF GRAYSON COUNTY
                                 Brett L. Geisler, Judge

              (J. L. Tompkins, IV, on brief), for appellant.  Appellant submitting
              on brief.

              (Graham M. Parks; Kimberly L. Osborne, Guardian *ad litem* for the
              minor children, on brief), for appellee.  Appellee and Guardian
              *ad litem* submitting on brief.


        Brandy McCoy, s/k/a Brandi McCoy (hereinafter "mother"), appeals the termination of

her residual parental rights to her children, J.P. and H.C.  Mother asserts the evidence was

insufficient to support the trial court's decision.  For the reasons stated, we affirm the trial court's

decision.

                                          Background

        When reviewing a decision to terminate parental rights, we presume the circuit court

"'thoroughly weighed all the evidence, considered the statutory requirements, and made its

determination based on the child's best interests.'"  Toms v. Hanover Dep't of Soc. Servs., 46

Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie County Dep't of

Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The children were removed from mother's care in Ashe County, North Carolina, on or about June 11, 2008, when mother signed a safety plan. They were placed with their maternal grandmother, Gail Trivett, and an uncle, D.J. McCoy, in Grayson County, at which time the Grayson County Department of Social Services ("DSS") monitored the children.

On June 20, 2008, mother was arrested and incarcerated in North Carolina on five drug-related felonies. On June 24, 2008, DSS removed the children from Trivett's home pursuant to an emergency order finding abuse and neglect after D.J. McCoy was also arrested. Trivett's health did not permit her to take care of the children without full-time assistance.

The drug charges against mother were not pursued in the lower court, but she was indicted in October 2008 and pled guilty to one or more felonies in March 2009. Between June 2008 and March 2009 mother spent several months in jail. She was released from jail in March 2009.

Upon her release from incarceration, mother completed her GED, completed counseling and parenting classes, found a job, and rented a home from a sibling. However, mother quit her job after only six weeks, and in September 2009, her sibling advised her she needed to move out of her sibling's residence. Mother failed to stay in touch with DSS after leaving her sibling's residence. After making several failed attempts to get in touch with mother, DSS learned in late September 2009 she was staying in Trivett's home and had no transportation of her own. In November 2009 mother had relocated to her father's home in North Carolina. Placement in her father's home was not an option due to a substantiated sexual abuse investigation by the North Carolina Department of Social Services. In December 2009 mother refused to supply DSS with her address and did not give DSS her phone number and address until shortly before the initial termination hearing in February 2010.

On February 16, 2010, the juvenile and domestic relations district court terminated mother's residual parental rights.  Mother was allowed supervised telephone calls with her children once a week, but despite several attempts by DSS to reach her, the children spoke with mother only once prior to the circuit court hearing on April 16, 2010.  At that time, the trial court granted DSS's petition to terminate her rights.  The trial court found that, "except for a brief six-week period," mother had not followed the court's instructions or DSS's recommendations by obtaining full-time employment and a safe home for her and her children.  While mother appeared at the hearing with a home and a job, she was unable to assure the trial court she would be able to maintain either.  Her only other employment prospect at the time of the hearing was a restaurant open only on a seasonal basis.  The children had adjusted well to their foster care placements and were doing well in school academically and socially.

Analysis

Mother maintains she substantially remedied the conditions which led to or required continuation of her children's foster care placement.  She notes that she supplied DSS with a new address on January 10, 2010, but DSS made no effort to assess the home's suitability.  She also points out she had a job on a farm as of April 2010.

"'The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it."'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659 (other citation omitted)).  "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Pursuant to Code § 16.1-283(C)(2),

> The residual parental rights of a parent or parents of a child placed
> in foster care as a result of  . . . an entrustment agreement entered

into by the parent . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

       \*       \*       \*       \*       \*       \*       \*

2. *The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.* Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

(Emphasis added).

At the time mother's parental rights were terminated, her children had been removed from her custody for almost two years. While mother briefly attempted to remedy the conditions which led to the children's removal, she was unable to sustain that effort by obtaining stable employment and housing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Virginia law recognizes the "maxim that, sometimes, the most reliable way to guage a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" Id. (citation omitted).

- 4 -

> "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770. Here, despite evidence mother loved her children and a bond existed between them, she was unable to provide them with the stable home and care necessary to meet their needs.

The decision of the trial court is not plainly wrong or without evidence to support it. Accordingly, we affirm the decision.

Affirmed.