COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Alston and Senior Judge Coleman


THOMAS COPELAND

                                                    MEMORANDUM OPINION[*]
v.      Record No. 1012-11-1                              PER CURIAM
                                                    DECEMBER 20, 2011
NEWPORT NEWS DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                          Aundria D. Foster, Judge

            (Jeffrey C. Rountree; Sharon A. Coles-Stewart, Guardian *ad litem*
            for the infant child, on brief), for appellant.  Appellant and
            Guardian *ad litem* submitting on brief.

            (Robert E. Pealo, Assistant City Attorney, on brief), for appellee.
            Appellee submitting on brief.


        Thomas Copeland (hereinafter "father") appeals the termination of his residual parental

rights to his child, J.M.  Father asserts the evidence was insufficient to support the trial court's

decision.  For the reasons stated, we affirm the trial court's decision.

                                    Background

        When reviewing a decision to terminate parental rights, we presume the circuit court

"'thoroughly weighed all the evidence, considered the statutory requirements, and made its

determination based on the child's best interests.'"  Toms v. Hanover Dep't of Soc. Servs., 46

Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie County Dep't of

Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

J.M., born September 23, 2008, was removed from the custody of his parents on April 2, 2009, after the parents were arrested for drug possession and distribution.[1] The child and his parents were living in a hotel room with several other adults; police confiscated cocaine, marijuana, and a pellet gun from the scene.

Father and Elizabeth McGee, J.M.'s mother, had previously received housing and financial assistance from the Newport News Department of Human Services ("DHS") in 2006 and 2007 in connection with their older children. Despite this assistance, the children were removed, and father's residual parental rights to the children were terminated on April 30, 2008.

DHS filed the initial foster care service plan with respect to J.M. on June 2, 2009, with a goal of relative placement. At that time, father was incarcerated. Father was released in September of 2009, and the juvenile and domestic relations district court amended the plan to include a concurrent goal of return home. On November 20, 2009, DHS filed a foster care service plan reflecting these two goals. To achieve the goal of return home, father was required to complete a parenting class, obtain and maintain employment and housing, and complete a parental capacity evaluation. In addition, father was to follow the recommendations of the parental capacity evaluation within three months, as well as complete a medication evaluation and follow the recommendations of that evaluation. Finally, father was required to cooperate with DHS, inform it of changes to his employment and living status, visit consistently with J.M., and participate in J.M.'s medical treatment and examinations.

DHS assigned a parent support specialist to father to assist him in achieving these goals. The specialist provided reunification services, transportation to visitation, job search assistance, and supervised visitation. Other services rendered by DHS included bus passes, parenting class

---

[1] Mother was also charged with felony child neglect. Father was charged with contributing to the delinquency of a minor.

referrals, parenting education, resume assistance, job training, housing referrals, and referral to family therapy.

Despite the foregoing services, father was unable to secure employment or housing. Although father told DHS he had obtained a job paying $6.50 per hour, he never provided any verification of his employment to DHS. During the months prior to the termination hearing, father lived with friends. His inability to obtain identification and his extensive felony record prevented him from pursuing the housing and employment options offered by DHS.

Father began weekly visitation with J.M. upon his release from incarceration in September 2009, but often failed to show up. The social worker who supervised the visitation estimated that father missed approximately forty percent of the visits, and when he did appear, father frequently "would nod off and fall asleep." The social worker observed that J.M.'s mother was the parent who primarily interacted with J.M. during visitation.

Father participated in the parental capacity evaluation; however, he failed to follow through with the family therapy recommended as the result of that evaluation. Father appeared for structural family therapy on only four occasions between December 2009 and February 2010 before he abandoned the sessions.

Father acknowledged he had had "legal difficulties" for approximately twenty years prior to the termination hearing. In addition to his arrest for drug distribution at the time of removal, father was charged with possession of marijuana in January of 2010, and was convicted in April of 2010. At the time of the hearing in May of 2011, father was incarcerated and awaiting trial on a malicious wounding charge. Father denied using drugs, but admitted that he had numerous felony convictions and that they were "mainly" drug-related.

The social worker supervising J.M.'s foster care testified J.M. had been with the same agency-approved foster home from April 2009 to May 2011, and described his situation as

"excellent." J.M. had bonded with his foster parents and was developing normally. His foster parents had expressed their interest in adopting J.M.

The trial court terminated father's residual parental rights pursuant to Code § 16.1-283(C)(2) and 16.1-283(E)(i). This appeal followed.

Analysis

"'The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it."'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659 (other citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Pursuant to Code § 16.1-283(C)(2),

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
>    *    *    *    *    *    *    *
>
> *The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.* Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior

efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

(Emphasis added).

Father acknowledges he failed to satisfy all of the conditions for J.M.'s return, but points out he did fulfill "a number of them within twelve months and continued to work on some issues after the twelve month period." As J.M.'s biological parent, he argues a "strong presumption" exists that J.M.'s best interests are served by granting custody to him.

At the time father's parental rights were terminated, J.M. had been removed from his custody for over two years. While father completed a parenting class and a parenting capacity evaluation, he did not follow through with the family therapy recommended by the evaluation. In addition, he missed a substantial number of visitation appointments with J.M., and on the occasions he did appear, he did not interact with the child and frequently fell asleep. Despite extensive services from DHS, father failed to secure stable employment or housing.

Father had an extensive felony record spanning over twenty years. He was arrested for drug distribution at the time of J.M.'s removal and was arrested again for marijuana possession during the time the child was in foster care. At the time of the termination hearing, father was awaiting trial on malicious wounding charges.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to guage a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" Id. (citation omitted). "No one can divine with any assurance the future course of human

> events. Nevertheless, past actions and relationships over a
> meaningful period serve as good indicators of what the future may
> be expected to hold." Winfield v. Urquhart, 25 Va. App. 688,
> 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770. Here, the evidence showed J.M. was thriving

under the care of his foster parents with whom he lived from the time he was six months old. He

had a strong bond with his foster parents, and the foster parents were willing to adopt him. By

contrast, father presented no evidence of any bond with J.M. other than a biological one, and

demonstrated he was unable to provide J.M. with the stable home and care necessary to meet the

child's needs.

The decision of the trial court is supported by clear and convincing evidence, and

accordingly, is affirmed.[2]

Affirmed.

---

[2] Because we conclude that the trial court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2), we need not consider the trial court's determination that Code § 16.1-283(E)(i) also supported termination on the basis that father's parental rights had been previously terminated with respect to a sibling.