COURT OF APPEALS OF VIRGINIA


Present: Judges Haley, McCullough and Senior Judge Willis


KATY CALLENDER

                                                       MEMORANDUM OPINION[*]

v.      Record No. 1943-11-2                                    PER CURIAM
                                                    FEBRUARY 28, 2012

PETERSBURG DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge

(Linda M. H. Tomlin; Tomlin & McKeen, PLLC, on brief), for
appellant. Appellant submitting on brief.

(Joan M. O'Donnell; Susan G. Andrews, Guardian *ad litem* for the
minor child, on brief), for appellee. Appellee and Guardian *ad
litem* submitting on brief.


Katy Callender (hereinafter "mother") appeals the termination of her residual parental

rights to her child, M.B. Mother asserts the trial court erred in approving a goal of adoption and

in terminating her residual parental rights under Code § 16.1-283 where there was no evidence

mother was beyond reasonable rehabilitative efforts and where mother had made significant

efforts to rehabilitate herself after the child was removed from the home. For the reasons stated,

we affirm the trial court's decision.

Background

When reviewing a decision to terminate parental rights, we presume the circuit court

"'thoroughly weighed all the evidence, considered the statutory requirements, and made its

determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46

Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cnty. Dep't of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).[1]  Mother has a long history of substance abuse and unsuccessful attempts at recovery.  As a result of her abuse of prescription drugs in New Mexico, she was convicted in 2005 and 2006 of forgery, attempted forgery, and violation of New Mexico's Controlled Substances Act, N.M. Stat. Ann. § 30-31-25.  Despite her participation in substance abuse programs, including a 30-day inpatient program and a three-month program, her New Mexico criminal proceedings concluded with an amended order of unsatisfactory discharge from probation in April 2009.

Less than a year later, mother was arrested in Virginia and charged with three felony counts of attempting to obtain prescription drugs illegally.  Following a complaint with the Petersburg Department of Social Services ("DSS"), DSS referred mother to "District 19" for substance abuse treatment in February 2010.  Mother failed to comply.

On August 20, 2010, Jason Callender, mother's husband, came home to find her passed out on the floor.  Callender called "911."  Mother was hospitalized, but she signed herself out of the hospital against medical advice and returned home.  Later that day, Callender left mother and M.B. alone together briefly, and upon his return, he found mother on the floor exhibiting symptoms of a seizure.  Mother was hospitalized again, but on this occasion, she was placed in the behavioral unit for three days on suspicion of a methadone overdose.

On August 24, 2010, M.B. was placed with DSS after Callender announced he could not care for M.B. and attempts to place the child with relatives were unsuccessful.  DSS initially established a goal of returning M.B. home.  The initial foster care service plan required mother to complete substance abuse treatment, complete a psychological evaluation and comply with the recommendations of that report, and comply with District 19's recommendations.  District 19's

---

[1] The facts are drawn from the statement of facts filed with the trial court in lieu of a transcript pursuant to Rule 5A:8.

recommendations included obtaining employment and stable housing, completing parenting classes, participating in random drug screens, attending scheduled visits with M.B., signing releases, attending meetings and court hearings, and cooperating with DSS. Mother was also required to provide DSS with copies of her paystubs, utility bills, and rental payments.

In August 2010, mother was referred to intense inpatient treatment for substance abuse, but she failed to comply. In November 2010, the juvenile and domestic relations district court ordered mother to complete substance abuse treatment by May 2011, but she failed to do so.

Between January and September 2011, mother provided DSS with documentation that she worked fourteen hours each week, but she did not provide proof of a lease or utility payments. When DSS sent a letter to mother at her last known address, the letter was returned to DSS undelivered. On February 24, 2011, DSS requested a copy of mother's lease and her receipts for utility bills, but mother failed to provide them. In April 2011, DSS filed a new foster care service plan seeking a change in goal from return home to adoption.

At the time of the termination hearing on September 7, 2011, DSS did not know where mother resided. She had failed to complete parenting classes or substance abuse treatment. While she had completed a psychological evaluation, she failed to comply with the recommendations of that evaluation. Mother had also failed to pay child support, resulting in pending proceedings against mother in juvenile and domestic relations district court.

Mother acknowledged at the termination hearing she had not complied with court orders between 2006 and 2009 in connection with her illegal use of prescription drugs. According to the statement of facts, "her older child was not in the legal custody of her mother as a result of her drug addiction." Mother acknowledged she had left her older child in New Mexico with the older child's maternal grandmother "because she was better off" there. Mother conceded she resisted substance abuse treatment in February 2010 and August 2010 because she did not believe she had a

serious substance abuse problem. At the time of the hearing, mother noted her current substance program was "the longest and most intense in which she had participated," and "she was willing to accept the program . . . ." Nevertheless, mother agreed she was not in a position at the time of the hearing to assume custody of M.B.

M.B. remained with the same foster parents from the time of her initial placement in August 2010 until the time of the termination hearing in September 2011. The guardian *ad litem* who visited M.B. and her foster parents in their home noted M.B. "had established great rapport" with her foster parents and "was just a happy little girl." M.B. attended daycare and church and had many friends, as well as her own room, toys, and a dog.

At the conclusion of the hearing, the trial court terminated mother's residual parental rights under subsections (b) and (c) of Code § 16.1-283(B)(2), as well as under Code § 16.1-283(C)(2). This appeal followed.

Analysis

The "termination of residual parental rights is a grave, drastic and irreversible action," Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we presume the trial court "'to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests,'" Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Code § 16.1-283(B) and 16.1-283(C)(2) are "individual bases upon which a petitioner may seek to terminate residual parental rights." City of Newport News Dep't of Soc. Servs.

v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003). Upon concluding that termination of parental rights under one subsection of Code § 16.1-283 is warranted, we need not consider whether termination was appropriate under another subsection. Fields, 46 Va. App. at 8, 614 S.E.2d at 659. Here, because we conclude that the trial court did not err in terminating mother's residual parental rights under Code § 16.1-283(B)(2), we need not review its decision to terminate her parental rights under subsection C.

Code § 16.1-283(B) provides that the residual parental rights of a parent of a child found by the court to be neglected or abused and placed in foster care as a result of court commitment may be terminated if clear and convincing evidence proves that it is in the best interests of the child and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.
>
> Proof of any of the following shall constitute prima facie evidence of the conditions set forth in subdivision B 2 hereof:
>
>> a. The parent or parents are suffering from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development; or
>>
>> b. The parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning; or

- 5 -

c. The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child.

"[S]ubsection B 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms, 46 Va. App. at 270-71, 616 S.E.2d at 772 (internal citation and footnote omitted). Here, mother acknowledged she had a substance abuse addiction dating back as far as 2006 for which she was unable to complete treatment successfully. Despite her continuing substance abuse problems, several criminal convictions, and loss of custody over her older child, mother repeatedly failed to comply with treatment recommendations because she did not believe she had a "serious" problem. Mother also failed to prove her ability to secure a lease or to provide financial support to M.B.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" Id. (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770.

Based on this record, the trial court was entitled to conclude that mother had a substance abuse addiction that "seriously impaired" her parenting abilities and that mother, "without good

cause, ha[d] not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning." The record also supports a finding that, as a result of mother's continuing addiction, M.B. suffered neglect or abuse that "presented a serious and substantial threat to [her] life, health or development" and that "it [wa]s not reasonably likely that the conditions which resulted in such neglect or abuse c[ould] be substantially corrected or eliminated so as to allow the child's safe return to [mother] within a reasonable period of time." While mother was hopeful she would finally benefit from her most recent attempt at treatment, she acknowledged she was not yet in a position to care for M.B.

Consistent with Kaywood, Code § 16.1-283(B) required the trial court to find only that mother was unlikely to substantially remedy or eliminate the conditions that led to the abuse or neglect within a reasonable period of time. Based on mother's long-standing addiction and failed attempts at treatment, we cannot say the evidence failed to support the trial court's decision that mother was unlikely to eliminate the conditions leading to M.B.'s neglect. Furthermore, M.B. was happy, stable, and well-adjusted in her foster home, supporting the trial court's conclusion that termination of mother's parental rights was in M.B.'s best interests.[2]

Accordingly, we affirm the decision of the circuit court.

Affirmed.

---

[2] Mother additionally contends the trial court erred in approving the foster care plan's "change in goal" to adoption. "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision." Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). It logically follows, therefore, that our conclusion that the trial court did not err in terminating mother's parental rights under the more stringent clear-and-convincing-evidence standard set forth in Code § 16.1-283(B) and (C) "necessarily subsumes" this aspect of mother's appeal. Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3.