COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Senior Judge Willis


STEPHANIE GAYLE McMILLIAN

v.      Record No. 2177-10-2

CHESTERFIELD DEPARTMENT OF
  SOCIAL SERVICES                                    MEMORANDUM OPINION[*]
                                                        PER CURIAM
                                                        MAY 3, 2011

STEPHANIE GAYLE McMILLIAN

v.      Record No. 2436-10-2

CHESTERFIELD DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

(Mark E. Englisby; Englisby, Vaughn & Slone, on briefs), for
appellant.

(Jeffrey L. Mincks, County Attorney; Michael S. J. Chernau, Senior
Assistant County Attorney; Scott D. Landry, Guardian *ad litem* for
the minor children; Duty, Duty & Landry, on brief), for appellee.[1]


On October 5, 2010, the trial court entered an order terminating the residual parental rights

of Stephanie Gayle McMillian (mother) to four of her children pursuant to Code § 16.1-283(C)(2).

On appeal, mother argues the trial court erred by:  (1) terminating her parental rights; (2) finding it

was in the best interests of the children to terminate her parental rights; and (3) approving the goals

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellee did not file a brief in Record No. 2436-10-2.

of adoption. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Termination pursuant to Code § 16.1-283(C)(2) requires proof that the parent, "without good cause, has been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement," notwithstanding reasonable and appropriate efforts of services agencies.

The evidence showed that the Chesterfield Department of Social Services (the Department) had been involved with mother's family since 2002. A social worker testified that the family had a history of physical and medical neglect, lack of supervision, drug use, criminal charges, and issues of instability and improper boundaries between the parents and children. The written statement of facts further states that the social worker "testified generally to the services that were provided to the family by the Department or other rehabilitative agencies prior to and after the children came into foster care."

On March 13, 2008, the Department entered a protective order admonishing mother to attend substance abuse treatment, submit to random drug and alcohol screens, ensure the children

attended school, and provide supervision of the children at all times. Mother failed to comply with the protective order. On May 13, 2008, the children's maternal grandmother was awarded temporary custody of the children based on an adjudication by the juvenile and domestic relations district court (JDR court) that the children had been abused and neglected. Mother was ordered to have no contact with the children except as recommended by the Department and she was again ordered to complete substance abuse treatment. Mother participated in substance abuse treatment at irregular intervals, she never completed the treatment, and she continued to use drugs.

In February 2009, as a result of mother's failure to complete substance abuse treatment, her arrest for committing a criminal offense, and the Department's determination that ordering services for her was no longer warranted, the JDR court granted the maternal grandmother legal and physical custody of the children.

In April 2009, the maternal grandmother advised the Department she was no longer willing or able to care for the children. The Department consented to mother's request for the children to reside with her temporarily and the Department provided stabilization services to mother, including paying her rent for one month. A social worker testified that although mother participated in the services offered, she failed to refrain from using illegal substances or provide a stable home for the children.

In late September 2009, mother pled guilty to a charge of grand larceny and entered a county drug court program. In October 2009, the Department learned that mother had been incarcerated as a sanction for violating the terms of the drug court program. Mother had left the children in the care of their maternal grandfather.

The Department was granted emergency custody of the children based, in part, on the lack of appropriate care by mother and the maternal grandfather. During the time the Department had custody of the children, the oldest child became pregnant and three of the children ran away from a

foster home.  Although they had some difficulty adjusting to their foster homes, at the time of the trial court hearing, the children were doing well in their placements and they had bonded with their foster parents.  Several of the children were assessed in need of mental and medical care and the social worker stated their behavior and emotional well being had greatly improved since the placements.  The guardian *ad litem* for the children proffered the children's preferences in this matter, and all four children, ages nine to fifteen, desired either a goal of adoption by their foster parents or permanent foster care.  The guardian *ad litem* opined that the best interests of the children would be served by approving the plans for goals of adoption and terminating mother's parental rights.

In January 2010, mother was charged with a felony offense and she was incarcerated at the time of the trial court hearing.  Her expected release date was January 26, 2011.  Based on the new felony offense, mother was also terminated from the drug court program.  Mother testified she will be required to obtain employment upon her release and she will obtain suitable housing for herself and her children.  Mother also said she would address her substance abuse issues.

The guardian *ad litem* advised the trial court that he had been involved with the family in earlier proceedings as well as the instant proceedings.  He indicated that mother's circumstances were far worse now than they were at the time the Department transferred custody of the children to the maternal grandmother in February 2009.

The trial court approved the changes in goals to adoption and it terminated mother's parental rights to the four children pursuant to Code § 16.1-283(C)(2).  Mother appeals the trial court's decision.

Mother argues the trial court erred in terminating her parental rights and in approving the change in goals to adoption.[2] She asserts she would be placed on probation in January 2011 and, upon her release, she will obtain employment and participate in drug screenings and substance abuse treatment. She also contends the trial court erred in finding the best interests of the children are served by terminating her parental rights where the children were "worse off" in their foster care placements than they were while they were in her custody.

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he [or she] has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (citation omitted).

Here, the evidence showed that, despite the efforts of the Department, mother had been unwilling or unable to remedy substantially the conditions that led to and required the continuation of the children's foster care placement. The evidence showed the Department had been involved with mother's family for about eight years. A social worker testified the family had a history of physical and medical neglect, lack of supervision, drug use, criminal charges, and issues of instability and improper boundaries between the parents and children. Mother repeatedly failed to complete drug treatment opportunities both before and after the children were removed from

---

[2] We note that many of mother's arguments relate to the requirements of Code § 16.1-283(B). However, the trial court terminated her parental rights pursuant to Code § 16.1-283(C)(2), not Code § 16.1-283(B). Therefore, we do not address the arguments related to Code § 16.1-283(B).

her care.  By the time of the trial court hearing, mother had been terminated from the drug court program and she was incarcerated for committing a felony offense.

Furthermore, the termination of mother's parental rights was not based solely on mother's incarceration.

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

As stated previously, mother had on-going issues with drug abuse, and she failed to provide the children with a stable home.  "Virginia law recognizes the 'maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past.'"  Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770 (quoting Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003)).  In this regard, mother's "'past actions . . . over a meaningful period serve as good indicators of what the future may be expected to hold.'"  Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

Moreover, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  At the time of the termination hearing, the children had been in foster care for the past eleven months and they were doing well with their foster care placements and had bonded with their foster parents, although they had experienced some initial difficulty adjusting to the foster homes.  Evidence was presented that their behavior and emotional well being had greatly improved since the placements into foster homes.

The guardian *ad litem* for the children proffered the children's preferences in this matter. Each of the four children, ages nine to fifteen, desired either a goal of adoption by their foster parents or permanent foster care. The guardian *ad litem* opined that the best interests of the children would be served by approving the plans for goals of adoption and terminating mother's parental rights.

Based upon the foregoing, the trial court did not err in changing the goals to adoption, finding termination was in the best interests of the children, and terminating mother's parental rights pursuant to Code § 16.1-283(C)(2). Accordingly, the trial court's decisions are affirmed.

<u>Affirmed.</u>