COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Clements and Kelsey
Argued at Salem, Virginia

CRAIG JOHN PETRY

                                                            OPINION BY
v.        Record No. 0076-03-3                   JUDGE D. ARTHUR KELSEY
                                                         DECEMBER 16, 2003

ROSEANN PETRY


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                           J. Leyburn Mosby, Jr., Judge

            Lawrence D. Diehl (Richard P. Cunningham; Cunningham &
            Drewy, on brief), for appellant.

            William C. Scott, IV (Michie, Hamlett, Lowry, Rasmussen &
            Tweel, on brief), for appellee.


        Craig John Petry claims the chancellor erred by allowing his former wife, Roseann Petry, to

move from Virginia to New York with the parties' two children.  Finding that the chancellor did not

abuse his discretion, we affirm.

                                              I.

        When reviewing a chancellor's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting her the benefit of any reasonable inferences.

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle

requires us to discard the evidence of the appellant which conflicts, either directly or

inferentially, with the evidence presented by the appellee at trial."  Id. (citations and internal

quotations omitted).

        Craig and Roseann Petry were reared on Long Island in New York and their extended

families still reside there.  They began dating in high school and married on Long Island in 1993,

just after husband's first year in medical school at Medical College of Wisconsin.  In the early years

of her marriage, wife had several jobs ranging from "working for a rheumatologist, bank employment, an administrative assistant, and a second evening and part-time weekend job at a department store." Her earnings supplemented the student loans husband was receiving. In 1996, husband completed medical school and the parties moved to Pennsylvania for husband's medical residency. Wife gave birth to a daughter the same year, and in 1998 she gave birth to a son. Both parties agreed that wife would be a stay-at-home mom, though wife still worked from home for a brief period as a medical transcriptionist to supplement their income.

Wife made it a practice to return home to Long Island with the children every two to three months to visit family and friends. Visits commonly lasted for one to three weeks. The children became very familiar with Long Island and developed substantial connections there. Both children developed long-term friendships with other children living on Long Island. They were baptized at wife's family's church on Long Island. And both children have celebrated most of their birthdays, Christmas holidays, Easters, and Thanksgivings there. The children, wife testified, "know New York as their home."

Though husband accompanied them to New York at times, usually wife and the children went alone while husband either was working extended hours or was participating in social events related to work. If wife "knew he was going to be on call or if he knew it was going to be a busy week, busy rotation, he would say 'why don't you go to New York and spend time with your mom, I'm not going to be around.'"

Wife and two other witnesses testified that husband had difficulty bonding with his daughter. Husband, moreover, became increasingly distant from wife and the children during the last two years of his residency. He often spent time jogging with another woman. He would also golf, work out with a different woman, or engage in other activities in lieu of spending his limited time off with his family. Wife testified that it bothered her that he was "[s]pending so much time

with another woman instead of focusing on his new family. He seemed to have time to do his activities. Instead of including us in activities that we could do with a newborn infant, he found activities to do by himself instead of including us [as] a family."

In May 1999, after husband's residency, the parties moved to Lynchburg, Virginia, where husband became a partner in a local medical practice. When the parties decided to move to Lynchburg, wife explained, they did so "under the condition that he understood that because it was eight hours away, eight to ten hours away, I would take more frequent trips with our children to New York. And he said that is absolutely no problem."

Husband began an adulterous affair with one of his employees in January 2000. He continued this relationship for eighteen months, becoming increasingly detached from his family, and ultimately leaving the marital residence in July 2001. About a month after husband moved out of the family residence, he admitted having the affair. Wife filed for divorce on grounds of adultery.

Husband requested no overnight visitation with the children for approximately three and a half months after moving out. In October 2001, husband began visitation with the children from 3:30 p.m. to 7:00 p.m. on Wednesdays and from 5:30 p.m. Friday evening to 5:00 p.m. Saturday evening. As of August 2002, however, he admitted he maintained no clothes or other materials for the children in his home.

During the litigation, the parties agreed to joint legal custody of the children with primary physical custody to wife. Wife stated that she wished to return home with the children to Long Island, New York. In January 2002, husband wrote a letter to wife stating that, while he objected to the move to New York, he was "willing to agree to a move outside the Lynchburg area, outside the State of Virginia even" if he could see the children "every other weekend" and "[a]lternating major holidays and birthdays." He wanted to have this visitation, however, at his

home in Lynchburg. So he asked wife to meet him "half way for child pick up and drop off" and to live no further than would be reasonable for the children to "be expected to sit in the cars."

The trial court conducted a two-day *ore tenus* hearing, taking evidence from husband, wife, and three witnesses testifying on wife's behalf (one by *de bene esse* deposition). Husband called no witnesses to corroborate his testimony. The court found that wife proved husband's adultery, but nonetheless granted a no-fault divorce given the parties' twelve-month separation. The chancellor ordered joint legal custody of the children with primary physical custody to wife, in accordance with the parties' agreement.

The trial court also granted wife's request to move to New York with the children. With regard to visitation, the trial court gave two options depending on whether wife remained in Lynchburg or relocated to New York. In the former case, the court gave husband visitation every other weekend. In the event wife relocated to New York, the court granted husband visitation one weekend a month in Lynchburg, with wife responsible for transportation from New York to Lynchburg. If he desired, husband could have an additional weekend each month in New York at his own expense. Thus, whether wife relocated or not, husband was entitled to a total of two weekends a month with the children. The holiday and vacation visitation schedule remained the same whether or not wife relocated. The chancellor also granted husband four weeks of summer visitation in Lynchburg.

Husband filed a motion to reconsider. The chancellor reaffirmed his earlier ruling, holding that husband "abdicated to a great extent the caretaking and rearing of the children to the wife." Though taking note of husband's considerably better efforts after the breakup of the family,[1] the chancellor again made clear his opinion that "from all the evidence I've heard in this case" the best

---

[1] The chancellor noted that husband "probably has spent more time with [the children] after the separation than he had before."

interests of the children would be served by relocating to Long Island with their mother.  The court

also pointed out that the "arrangements made both by the Court and by the wife to have a continuing

contact" between husband and the children were "not significantly different than the contact he was

having when they were living in Lynchburg."[2]

II.

No Virginia statute specifically addresses relocation of a custodial parent.  Though

sometimes treated as a special topic, with principles unique to it, the relocation issue is best

understood under traditional constructs governing custody and visitation.  See Goodhand v.

Kildoo, 37 Va. App. 591, 599-600, 560 S.E.2d 463, 466-67 (2002).  When a trial court has

entered a final custody and visitation order,[3] it cannot be modified absent (i) a showing of

changed circumstances under Code § 20-108 and (ii) proof that the child's best interests under

Code § 20-124.3 will be served by the modification.  When no such order has been issued, the

court must only examine the best interests question.

In either case, the chancellor's decision regarding the relocation of a custodial parent "is

a matter of discretion," which we will not reverse "unless plainly wrong or without evidence to

support it."  Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (quoting

Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996)); see also

Cloutier v. Queen, 35 Va. App. 413, 427, 545 S.E.2d 574, 581 (2001).  On appeal, we will

---

[2] Prior to the final decree, husband had been seeing his children for a few hours each Wednesday afternoon and for one day and night per weekend (from 5:30 p.m. on Friday to 5:00 p.m. on Saturday).  His post-relocation proposal, put forward in his January 2002 letter, requested two full weekends a month at his home in Lynchburg with no weekday visits.  The trial court's final order authorized two weekends a month (one in Lynchburg, the other in New York) and four weeks of summer visitation.

[3] By statute, *pendente lite* orders entered by trial courts prior to a final decree have "no presumptive effect and shall not be determinative when adjudicating the underlying cause." Code § 20-103(E); see also Shackelford v. Shackelford, 39 Va. App. 201, 215 n.4, 571 S.E.2d 917, 922 n.4 (2002).  Res judicata, therefore, does not apply to *pendente lite* orders.

overturn a decision committed to the chancellor's sound discretion only upon a showing that he abused that discretion. An abuse of discretion can be found if the "trial court uses 'an improper legal standard in exercising its discretionary function,'" Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (quoting Thomas v. Commonwealth, 263 Va. 216, 233, 559 S.E.2d 652, 661 (2002)), because a trial court "'by definition abuses its discretion when it makes an error of law,'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)); see also Mughrabi v. Commonwealth, 38 Va. App. 538, 545, 567 S.E.2d 542, 545 (2002).

A trial court also abuses its discretion by failing "to consider the statutory factors required to be part of the decisionmaking process," Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (citing Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997)), or by making "factual findings that are plainly wrong or without evidence to support them," id. (citing Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002)). Even so, we do not "retry the facts or substitute our view of the facts for those of the trial court." Congdon, 40 Va. App. at 266, 578 S.E.2d at 838 (citation and internal quotation marks omitted). That is particularly true when a chancellor hears evidence *ore tenus*. A decree based on such evidence "is entitled to the same weight as a jury verdict" and receives the same deference on appeal. Chesterfield Meadows Shopping Ctr. v. Smith, 264 Va. 350, 355, 568 S.E.2d 676, 679 (2002) (citation omitted).

## III.

In this case, the chancellor addressed the relocation issue for purposes of entering a final decree. Not required to find changed circumstances, the trial court properly focused on the best interests of the children. On appeal, husband argues that the chancellor abused his discretion in applying the best interests standard — claiming that our recent decision in Sullivan, which

- 6 -

reversed a trial court relocation order, is "dispositive" of this case and requires the same result here. "If the current ruling of the trial court is affirmed," husband argues on brief, "then this would leave the bar and public with two decisions that are inexplicably directly in contradiction to each other, thus providing no guidance on the law as to future cases on the issue." Finding Sullivan distinguishable, we disagree.

In Sullivan, the trial court ordered liberal visitation for the father in its final divorce decree. Sullivan, 38 Va. App. at 776, 568 S.E.2d at 432. The father later remarried, purchased a new residence close to his former wife, and filed a change-of-condition petition for even more extensive visitation. The trial court granted this petition. Three months later, the mother announced her intention to remarry and relocate to South Carolina. Father immediately filed a motion for a temporary restraining order and requested a hearing to prevent her from relocating with the parties' child. Id. at 777, 568 S.E.2d at 432. During the relocation hearing, the mother's new husband admitted that the "'prime motivation' for pursuing the move was to locate nearer the [sic] South Carolina residence of his eight-year-old son from a prior marriage, thereby affording him 'more involve[ment]' in the child's life." Id. at 778, 568 S.E.2d at 433. Nothing in the record showed that the relocation would be independently in the best interests of the parties' child.

On appeal, we pointed out that the record showed that the father was "an exceptionally committed and attentive non-custodial parent" and had "established and maintained an 'attachment' or 'bond'" with the child that "demonstrably benefited" the child's development. Id. at 783, 568 S.E.2d at 435. The requested relocation "was prompted solely by wife's marriage" and her new husband's "desire to pursue employment and residence in South Carolina to be nearer his child by a prior marriage . . . ." Id. at 784, 568 S.E.2d at 435. For these reasons, we held that despite the presence of changed circumstances the trial court abused its discretion

by artificially conflating the best interests of the custodial wife and her new husband with those of the child. Id. at 784-85, 568 S.E.2d at 436.

Here, the trial judge directly addressed Sullivan during the motion to reconsider hearing. He found no persuasive parallels between Sullivan and the case before him, and thus, rejected husband's argument that Sullivan dictated a ruling against the proposed relocation as a matter of law. For five reasons, we concur with the chancellor.

First, unlike the father in Sullivan — who was found to be "an exceptionally committed and attentive" parent, id. at 783, 568 S.E.2d at 435 — the chancellor in our case found that, prior to the separation, husband had "abdicated to a great extent" his parental duties.[4] The functioning family unit during the marriage consisted of wife and the children. Wife had "devoted her life to taking care of the children," the chancellor found. Though husband's parenting improved after the divorce litigation began, his prior history of paternal disinterest could not be overlooked. Code § 20-124.3(5) requires the chancellor to consider the "role which each parent *has played and will play in the future*, in the upbringing and care of the child." (Emphasis added). This mandatory examination of the historic role each parent has played does not, as husband argues, punish a parent for past failings. It simply stands for the maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past. As many courts have observed, one permissible "measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child." In re Jasmon O., 878 P.2d 1297, 1310 (Cal. 1994).[5]

---

[4] Husband's brief on appeal goes to some length to refute this finding. "We are not the fact-finders," however, "and an appeal should not be resolved on the basis of our supposition that one set of facts is more probable than another." Fox v. Fox, 41 Va. App. 88, 96, 581 S.E.2d 904, 908 (2003) (quoting Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992)).

[5] See also In re K.S., 750 N.E.2d 832, 837 (Ind. App. 2001) ("[T]he trial court should also take into account the parent's habitual patterns of conduct as a means of determining the probability of future detrimental behavior . . . ."); Adoption of Katharine, 674 N.E.2d 256, 261 (Mass. App. Ct. 1997) (Courts "may consider past conduct to predict future ability and

The trial court, therefore, did not err in taking account of husband's prior parental abdication and contrasting it with the dissimilar findings in <u>Sullivan</u>.

Second, the child in <u>Sullivan</u> had no connection whatsoever to the area where the mother sought to relocate. In our case, however, husband, wife, and the children have substantial contacts with Long Island. Both sets of paternal and maternal grandparents live on Long Island, and the children have spent many extended vacations visiting family there. They also developed friendships with other children, attended religious services, and spent most of their holidays on Long Island. As their mother put it, the children think of "New York as their home." The trial court, therefore, had ample basis to conclude that the children would benefit from the nurture and support of their extended family in New York, as well as the familiarity of their Long Island community.

Third, the chancellor pointed out that the post-relocation visitation ordered in this case was "not significantly different than the contact [husband] was having when they were living in Lynchburg." Nor did husband present any evidence demonstrating that the frequency of post-relocation visitation would be detrimental to the best interests of the children. To be sure, husband conceded before trial that a visitation schedule of "every other weekend" and "[a]lternating major holidays and birthdays" would be acceptable so long as he could enjoy that

---

performance."); <u>Blankley v. Blankley</u>, 28 Pa. D. & C. 4th 561, 567 (1993) ("[W]e are also cognizant that the past behavior of a parent may be considered as predictive of future behavior."); <u>Stolarick v. Novak</u>, 584 A.2d 1034, 1037 (Pa. Super. Ct. 1991) ("If in the past, the primary caretaker has tended to the child's physical needs and has exhibited love, affection, concern, tolerance, discipline and a willingness to sacrifice, the trial judge may predict that those qualities will continue." (citations and internal quotation marks omitted)); <u>In Interest of J.W.D.</u>, 458 N.W.2d 8, 10 (Iowa App. 1990) ("Insight for [determining future parenting] can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing.").

visitation at his home.[6]  If nothing else, this concession belies his assertion on appeal that the trial court abused its discretion in ordering two weekends a month visitation (one in Lynchburg at wife's expense, the other in New York at husband's expense) and evenly dividing the holiday schedule.

On the issue of the frequency of post-relocation visitation, the facts of Sullivan were considerably different.  There, expert psychological testimony established that the amount and frequency of post-relocation visitation were "not optimal" and differed so greatly from the prior schedule that the change could have a negative effect on the emotional well-being of the child. Sullivan, 38 Va. App. at 779, 568 S.E.2d at 433.  The child in Sullivan, the psychologist testified, would be better off with regular and frequent contacts with the father rather than "infrequent contacts of longer duration."

Fourth, on the issue of distance, we again see no conflict between the chancellor's decision in this case and our holding in Sullivan.  As Sullivan made clear, distance "should not be the sole basis for restricting a custodial parent's residence *except* where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent."  Id. at 783, 568 S.E.2d at 435 (quoting Scinaldi v. Scinaldi, 2 Va. App. 571, 574, 347 S.E.2d 149, 151 (1986)) (emphasis in original).  In this respect, the "'added difficulty in maintaining the parental relationship is not unique' but 'common to all parents whose children live some distance away.'"  Id.  Here, the evidence before the chancellor demonstrated that husband had both the job flexibility and the financial resources to maintain visitation with the children in New York.  The trial court, therefore, did not err in concluding that

---

[6]  Husband testified at trial that his written proposal contemplated only a temporary move out of state, not a permanent one.  Nothing in his detailed proposal, however, corroborates this caveat.

- 10 -

the "benefits of the relationship" between husband and his children could be "substantially maintained" after their relocation. Sullivan, 38 Va. App. at 783, 568 S.E.2d at 435.

Finally, we do not accept husband's assertion that the chancellor confused what was in wife's best interests with what was in her children's best interests under the so-called "unity of interest" approach expressly rejected in Cloutier, 35 Va. App. at 430, 545 S.E.2d at 583, and implicitly rejected in Sullivan, 38 Va. App. at 784-85, 568 S.E.2d at 436. In his resolution of the issues, the chancellor weighed the quality and consistency of the nurturance the children would receive in New York with their extended family and reaffirmed that his decision rested solely on the best interests of the children. That the relocation also benefited wife, he reasoned, did not "necessarily" conflict with the children's best interests.

We find the chancellor's reasoning sound. A trial court may consider a benefit to the custodial parent from relocation so long as the "move independently benefits the children." Cloutier, 35 Va. App. at 430, 545 S.E.2d at 583. To be sure, as we acknowledged in Sullivan, "advantages accruing to a custodial parent from relocation *oftentimes* inure to the benefit of a child" and should be taken into account. Sullivan, 38 Va. App. at 784, 568 S.E.2d at 436 (emphasis added). These inuring advantages must then be weighed against the possibility of "deleterious effects," particularly any adverse impact on "the relationship between the child and non-custodial parent." Id. In this case, the record demonstrates that the chancellor weighed the benefits and harms consistent with the teachings of Cloutier and Sullivan. We thus find unconvincing husband's argument that the chancellor erroneously fused wife's interests with those of her children.

IV.

In sum, we hold that the chancellor did not abuse his discretion by permitting wife to move with her children to Long Island, New York. We defer to the trial judge's view of the best

- 11 -

interests of the children, finding that he applied the proper legal standard and rested his decision on a sufficient factual basis.[7]

Affirmed.

---

[7] We deny appellant's and appellee's respective motions for attorney's fees incurred in this appeal, finding neither position unreasonable given the circumstances of this case. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).