COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Huff and Senior Judge Haley

MARIA AGUILAR

v.      Record No. 1249-14-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 30, 2014

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

(Sherwin John Jacobs, on brief), for appellant.  Appellant
submitting on brief.

(Rachel Errett Figura, Assistant County Attorney;
Warren A. Picciolo, Guardian *ad litem* for the minor child, on brief),
for appellee.  Appellee and Guardian *ad litem* submitting on brief.

Maria Aguilar (hereinafter "mother") appeals the termination of her residual parental

rights to her child, S.A.  Mother asserts the trial court erred in finding that the Harrisonburg

Rockingham Social Services District (hereinafter "HRSS") proved by clear and convincing

evidence S.A.'s abuse presented a serious and substantial threat to her life, health or

development and that it was not reasonably likely that the conditions resulting in such neglect or

abuse could be substantially corrected or eliminated so as to allow S.A.'s safe return to mother.[1]

For the reasons stated, we affirm the trial court's decision.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mother also asserts the trial court erred in finding the termination of residual parental
rights was justified under Code § 16.1-283(C)(2).  Code § 16.1-283(B) and 16.1-283(C)(2) are
"individual bases upon which a petitioner may seek to terminate residual parental rights."  City
of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466
(2003).  Upon concluding that termination of parental rights under one subsection of Code
§ 16.1-283 is warranted, however, we need not consider whether termination was appropriate

When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). On February 14, 2013, social worker Mary Lou Froude informed mother that seven-year-old S.A. had reported that mother's boyfriend, Teodoro Cruz, had sexually molested S.A. since she was in pre-kindergarten. With an interpreter present, Froude spent over thirty minutes providing mother with the details of the abuse. Froude informed mother Cruz had to leave mother's home "that night" and that mother should permit S.A. to have "absolutely no contact with him."

The following day, Froude visited mother in her home and reiterated S.A. could have no contact with Cruz. On February 21, 2013, Froude petitioned for a protective order prohibiting contact between S.A. and Cruz. The juvenile and domestic relations district court issued the order on February 27, 2013.

An abuse and neglect hearing was scheduled for March 13, 2013, but on March 9, 2013, S.A. was hospitalized in Charlottesville for a ruptured appendix. Neither mother nor Cruz appeared for the hearing. Instead, on the day prior to the hearing, mother submitted a medical note asking that she be excused so that she could care for her daughter. On March 12, 2013, S.A. was discharged from the hospital. When Froude visited mother's home the following day, she

---

under another subsection. Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005). Here, because we conclude that the trial court did not err in terminating mother's residual parental rights under Code § 16.1-283(B), we need not review its decision to terminate her parental rights under subsection C.

discovered mother had taken her two daughters out of school, gathered their belongings, and moved out of their trailer.

Suspecting mother had driven the children to the home of Cruz's mother in Texas, Froude notified Texas authorities. Upon investigating, the Texas authorities found Cruz, mother, and mother's two daughters in the home. The home was located close to the Mexican border. Cruz was arrested. The two girls were placed in the custody of Texas social services on March 14, 2013. When Froude and another social worker flew to Texas on March 18, 2013 to retrieve the girls, they found S.A. in pain, pale, and clutching her right side. Mother acknowledged to social worker Sarah Davis she had failed to give S.A. the medications prescribed upon S.A.'s release from the hospital.

S.A.'s incision abscessed, and she required emergency surgery on March 20, 2013. She was placed in the intensive care unit for several days. After remaining in the hospital for approximately a week, S.A. was discharged and returned to her foster home.

Initially, HRSS established a goal of returning S.A. home, with a concurrent goal of a relative placement. However, during a counseling session in April 2013, mother reported she did not believe Cruz should be punished and that the sexual assault claims by her daughter were the result of a "misunderstanding." She stated that Cruz was a "great man."

Mother also lied to her therapist about the frequency and nature of her contact with Cruz. While mother told therapist Ana Arias that she had had a "few" phone conversations with Cruz in which she "yell[ed]" at him, Arias discovered mother had frequently conversed with Cruz during his incarceration. In late May 2013 Arias confronted mother and told mother she had listened to jailhouse recordings of mother's conversations with Cruz. The couple declared their love for each other during the conversations and made plans for the future. Cruz reassured mother he would return after he was deported and had a "job lined up in Philadelphia." Mother offered to help Cruz

financially in retaining a better criminal defense attorney. Cruz told mother "next time we'll take [the children] to Mexico and I'd like to see the fucking government follow us there."

When mother's psychological evaluation was completed in June 2013, it noted mother had a dependent personality, "idealized" Cruz, and did "not want to believe the sexual abuse occurred." Mother appeared on behalf of Cruz in criminal proceedings in October 2013 and testified she saw no evidence he had touched S.A. inappropriately and that she did not believe he would do so.

On October 31, 2013, HRSS established a new goal of adoption and terminating mother's parental rights.

At the time of the termination hearing, S.A.'s counselor, Jenny Kusyzk, testified that S.A. suffered from post traumatic stress disorder. She explained that S.A. and her sister were living with foster parents experienced in dealing with victims of trauma and the need for ongoing support services. Kusyzk noted that S.A. was attached to her foster parents and had "nightmares about leaving." Kusyzk also observed that the foster parents represented a potential adoptive home for S.A.

Following her placement with her foster parents, S.A. was "healing" and earning good grades in school. She reported she was "terrified" of Cruz, against whom she testified in criminal proceedings. She remained fearful he would hurt her and her mother, and expressed concern her mother would not protect her or her sister if they returned home.

At the conclusion of the hearing, the trial court found the evidence sufficient to terminate mother's residual parental rights under Code § 16.1-283(B) and Code § 16.1-283(C)(2). This appeal followed.

## Analysis

The "termination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29

(1991), and we presume the trial court "'to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests,'" Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Code § 16.1-283(B) provides that the residual parental rights of a parent of a child found by the court to be neglected or abused and placed in foster care as a result of court commitment may be terminated if clear and convincing evidence proves that it is in the best interests of the child and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms, 46 Va. App. at 270-71, 616 S.E.2d at 772 (internal citation and footnote omitted). Here, mother failed to protect S.A. against long-standing sexual abuse and, despite a protective order and repeated instructions to keep Cruz away from S.A., secretly left Virginia and ignored S.A.'s physical and emotional needs to resume a relationship with Cruz. Mother, who clearly understood the emergency protective order required her to appear in court

on March 13, 2013, used S.A.'s fragile health as a means to defy the court order and Froude's instructions to keep S.A. away from Cruz.

Even after S.A. was removed from mother's custody, and suffered post-surgical complications that required ICU treatment, mother placed her own needs above those of her daughter. While mother suggested to her therapist her contact with Cruz was hostile and limited, she spoke with him frequently, professed her love for him, and discussed plans for their future upon his release. Even after mother received psychological counseling, and even though S.A.'s abuse was severe enough to cause S.A.'s post traumatic stress disorder, mother refused to acknowledge her daughter's abuse and testified on Cruz's behalf at his criminal trial. Cruz was acquitted and released from jail, leaving S.A. "terrified" he would hurt her again.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to guage a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child." Id. (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770.

Based on this record, the trial court was entitled to conclude that mother was unwilling to sacrifice her relationship with Cruz in order to help S.A. recover physically and emotionally and, despite counseling, did not intend to protect her daughter from abuse in the future. On the contrary, the evidence proved mother continued to place S.A. at risk by refusing to support her

daughter emotionally, by assisting Cruz in his release from jail, and by planning to include him in the family's future. By contrast, S.A. was happy, stable, and "healing" in her foster home.

Thus, the evidence is overwhelming that termination of mother's parental rights was in S.A.'s best interests, that the neglect and abuse of S.A. was serious and presented a substantial risk to her life, health, and development, and that, despite counseling services, mother was unwilling and unable to substantially remedy the conditions that resulted in S.A.'s neglect or abuse so as to allow S.A.'s safe return home within a reasonable period of time.

Accordingly, we affirm the decision of the circuit court.

<u>Affirmed.</u>