UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges McCullough, Decker and Senior Judge Annunziata

CLIFTON LEWIS FLORA, III

MEMORANDUM OPINION[*]

v.     Record No. 2217-14-4                                    PER CURIAM
                                                              MARCH 3, 2015

SHENANDOAH COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF SHENANDOAH COUNTY
Dennis L. Hupp, Judge

(Nancie S. Williams; Pond, Pond & Williams, P.C., on brief), for
appellant.

(Rachel Errett Figura, Assistant County Attorney; Brandon Keller,
Guardian *ad litem* for the infant child; Allen & Allen, P.C., on brief),
for appellee.

Clifton Lewis Flora, III ("father") appeals the termination of his residual parental rights to

his child, H.F., pursuant to Code § 16.1-283(C)(2).  He maintains the "[t]he evidence at trial was

insufficient to show that [he] was unable to remedy substantially the conditions which led to or

required continuation of the child's foster care placement."  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  Rule 5A:27.

When reviewing a decision to terminate parental rights, we presume the circuit court

"'thoroughly weighed all the evidence, considered the statutory requirements, and made its

determination based on the child's best interests.'"  Toms v. Hanover Dep't of Soc. Servs., 46

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

"'The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it."'" Id. at 266, 616 S.E.2d at 769 (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659) (other citation omitted). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Pursuant to Code § 16.1-283(C)(2),

> [t]he residual parental rights of a parent or parents of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> \* \* \* \* \* \* \*
>
> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

At the time H.F. was placed in foster care in October 2012, she was five years old, and father was incarcerated. Father has an extensive criminal record dating back to the 1980s, and

had been incarcerated numerous times prior to H.F.'s removal. At the time of the termination hearing in October 2014, he was serving a five-year, seven-month sentence in connection with thirteen felonies committed in 2012. He also had felony charges pending in West Virginia. He was not scheduled to be released from prison until March 2017.

Despite his incarceration, father asserts the evidence proved he was able to "remedy substantially the conditions which led to or required continuation of the child's foster care placement." Code § 16.1-283(C)(2). He maintains his incarceration does not justify termination of his parental rights. He points out he has "a good and close relationship with his child," corresponded with her regularly, and followed the advice of Shenandoah County Department of Social Services in his correspondence. He also notes he attended counseling and parenting classes and was taking his medications on a regular basis. Finally, father asserts he had an "established plan for the child upon his release from incarceration," including a home for the child and employment.

> While long-term incarceration does not, *per se*, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Father was incarcerated during the entire time H.F. was in foster care. While he contends he had a strong bond with her, foster care worker Jennifer Allen testified that H.F. was "very resistant to talk [to father] on the phone and became rather upset." Allen noted that H.F. was not very talkative and had to be "prompt[ed] . . . a lot." After a few phone calls, Allen decided to stop the calls after H.F. became "very tearful and kind of shut down." H.F., who was aware her father was incarcerated, explained "she was scared of jail and . . . she didn't want to call anymore." Allen described H.F. as "adamant" in her resistance. Allen suggested sending letters

- 3 -

as an alternative to the phone calls, but after the child sent a couple of letters, she rejected Allen's suggestion to send additional correspondence to her father.

Allen noted H.F. had a "loving relationship" with her foster parents, and referred to them as "momma" and "daddy." She was affectionate toward them and asked when they could adopt her and her half-sister.

At the time of the termination hearing in circuit court, H.F. had been in foster care over two years, and father faced a lengthy prison sentence and pending felony charges. While he testified he had arranged housing and employment upon his release, he provided no evidence corroborating or detailing this general plan.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 489 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child." Id. (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770.

Here, father's extensive criminal record, his lengthy incarceration, and his potential incarceration on pending charges, coupled with his inability to provide a specific plan for H.F.'s care in the near future, provided the trial court with sufficient evidence to conclude he was

unable to provide H.F. with the stable home and care necessary to meet her needs.  Furthermore, H.F. had spent little time with father and had developed a strong bond with her foster parents.

Accordingly, clear and convincing evidence proved that father was unable to remedy substantially the conditions that led to or required continuation of H.F.'s foster care placement, within a reasonable period of time, and that termination of father's parental rights was in her best interests.

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.