UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner


IVY EDWINA MOONEY

v.      Record No. 0439-16-1

NEWPORT NEWS DEPARTMENT OF
 HUMAN SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 20, 2016


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.

(Shannon M. Manning, Assistant City Attorney; E. Paul Hubert,
Guardian *ad litem* for the minor child; Office of the City Attorney,
on brief), for appellee.


On March 14, 2016, the trial court terminated the residual parental rights of Ivy Edwina

Mooney (appellant) to her son, K.M., pursuant to Code § 16.1-283(C)(2). On appeal of this

decision, appellant challenges the sufficiency of the evidence to support the termination. Upon

reviewing the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## FACTS

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the

circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d

460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

A termination of parental rights under Code § 16.1-283(C)(2) requires clear and convincing evidence that termination is in the best interests of the child and that the parent,

> without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of . . . rehabilitative agencies to such end.

In addition,

> Proof that the parent . . . , without good cause, ha[s] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan . . . shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

K.M. was born to appellant on April 15, 2003. The identity of his biological father is unknown.

On May 27, 2014, the Newport News Department of Human Services (NNDHS) took custody of K.M. Officials at K.M.'s school had learned that K.M. was fearful of his mother and his living situation. An order of temporary detention at a psychiatric hospital was issued regarding appellant. However, she left the police station before she could be committed. K.M. was placed in foster care.

The initial foster care service plan called for appellant to complete an assessment of her mental health and parenting skills. For appellant to be reunified with K.M., she was required to establish stability with a mental health care provider, participate in any recommended services, follow all treatment recommendations, and participate in structural family therapy.

Shortly after K.M.'s removal, appellant became unemployed and was no longer living at her prior residence. NNDHS referred her to the Jobs for Life program to help her get stable employment. She did not complete the program. She refused assistance from NNDHS in obtaining stable housing.

Marcella Hollingsworth, a NNDHS family agent specialist, worked with appellant and K.M. after he was taken into custody. Initially, appellant was uncooperative regarding her scheduled weekly visitation with K.M. She tried to reschedule appointments with NNDHS workers who were not involved in her case and exhibited abusive behavior to NNDHS staff. There were instances when visitation sessions had to be ended because appellant made inappropriate comments to K.M. Moreover, in spite of being instructed to refrain, appellant insisted upon bringing K.M. quantities of

packaged meals that he liked. This practice led to unhealthy eating habits for K.M., as well as unsanitary living conditions in his foster home.

By October 2014, appellant's supervised visitation with K.M. had been reduced to twice per month. As a result of appellant's uncooperative and bizarre behavior, as well as her distrust of NNDHS employees, supervision of the visitation sessions was transferred to Positive Pathways.

Kimberley Foster was the guided visitation worker for Positive Pathways who assisted in appellant's case beginning in December 2014. Visitation was suspended after a session on April 16, 2015, when there was a verbal altercation, including "some physical posturing," between appellant and a NNDHS worker. During an attempt to reschedule visitation, appellant indicated she no longer desired services from NNDHS.

At a family partnership meeting on June 25, 2015, appellant was controlling of K.M., threw papers across the room, and objected to NNDHS calling her on the phone. Her behavior made a productive meeting impossible, and security officers became involved in the situation. As a result, visitation again was terminated.

Appellant completed the required parental capacity evaluation with Dr. Jennifer Gildea, a licensed clinical psychologist, on April 2, 2015. Appellant revealed that she was leery about participating in the assessment. She claimed NNDHS had misrepresented the circumstances regarding K.M.'s removal from her custody. Gildea diagnosed appellant with bipolar disorder with psychotic features. Gildea recommended appellant undergo a psychiatric evaluation to assess her need for mood stabilization or antipsychotic medication. Gildea also recommended, among other things, that appellant participate in individual therapeutic and structural family therapy, provide documentation of her employment, and obtain stable housing.

A termination hearing commenced in the trial court on December 14, 2015. At the time of that hearing, K.M. was twelve years old. He had resided in several different foster homes.

However, as of December 2015, K.M. had lived in his foster home for the previous five months, and that home was a potential adoptive placement for him. He had been diagnosed with major depressive disorder and was being provided with individual therapy. Although he was in the seventh grade, he was functioning on a first grade level. He was receiving tutoring and mentoring to improve the situation.

After hearing a portion of the agency's evidence, including the testimony from Gildea, the trial court continued the termination hearing for three months to give appellant more time to comply with Gildea's recommendations. The trial court admonished appellant to cooperate with NNDHS and to obtain the psychiatric evaluation or she risked losing her rights to K.M.

The termination hearing resumed on March 14, 2016. Appellant still had not obtained a psychiatric evaluation, despite the offer of funding and assistance from NNDHS.

Hollingsworth testified that she met with appellant on the day after the December 2015 hearing and provided appellant with a copy of Gildea's recommendations. Hollingsworth explained the difference between obtaining counseling and obtaining a psychiatric evaluation. Appellant said she did not want NNDHS involved in the counseling she planned to undertake. At a meeting on January 4, 2016, appellant declined the agency's offer of monetary assistance and transportation to obtain the psychiatric evaluation. Appellant had missed, and been unable to pay for, a counseling session with Catholic Charities. At a meeting on February 2, 2016, appellant indicated she had met with a counselor one time, but had not inquired about a psychiatric evaluation. She declined a home visit with Hollingsworth and the guardian *ad litem*. On March 11, 2016, appellant reported that she had lost her job, and she accused Hollingsworth of being somehow complicit in that occurrence.

Visitation between appellant and K.M. had resumed after the December hearing, but appellant's behavior at the sessions caused disruption at the NNDHS offices. During her visitations with K.M., appellant discouraged him from attending therapy and mentoring sessions that were for

- 5 -

his benefit. Nonetheless, three productive sessions of structural family therapy with appellant and K.M. were conducted after the December 2015 hearing.

Several relatives were considered as possible placements for K.M., but none was found to be suitable.

Testifying in her own behalf, appellant denied that NNDHS offered her financial assistance with the psychiatric evaluation. Appellant said she had been receiving counseling services at Catholic Charities. Appellant was then living at the home of a friend.

DISCUSSION

Appellant argues the trial court erred in determining that the requirements of Code § 16.1-283(C)(2) had been met and that termination of appellant's parental rights was in the best interests of K.M.[1] In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

---

[1] Although not expressly stated as an assignment of error, appellant argues that the trial court erred in failing to determine whether K.M., who was twelve at the time of the termination, objected to the termination. Code § 16.1-283(G) provides in pertinent part: "Notwithstanding any other provisions of this section, residual parental rights shall not be terminated if it is established that the child, if he is 14 years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination." Appellant did not argue in the trial court that the court was required to determine whether K.M. was "otherwise of an age of discretion." "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, we do not consider this argument on appeal.

"[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 589 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" Id. (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770.

As discussed above, NNDHS offered appellant numerous services designed to reunify her with K.M. She refused assistance in maintaining stable employment and housing. She exhibited uncooperative behavior with NNDHS and the plan for reunification with K.M. At the December 2015 termination hearing, the trial court gave appellant three more months to comply with Gildea's recommendations, particularly obtaining a psychiatric evaluation. During the ensuing months, appellant did not obtain the evaluation, and refused the assistance offered by NNDHS to accomplish it. She was unemployed and had no stable housing.

At the time of the March 2016 hearing, K.M. had been in foster care for almost two years. His foster home was a potential adoptive placement. He was receiving therapy and assistance to help him achieve greater success at school and meet his special needs.

We recognize that "[t]he termination of [residual] parental rights is a grave, drastic and irreversible action." Helen W. v. Fairfax Cty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-28 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to

spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Clear and convincing evidence thus proved the factors required for termination under Code § 16.1-283(C)(2), including that termination was in the best interests of K.M.

CONCLUSION

For the foregoing reasons, we summarily affirm the decision of the trial court. See Rule 5A:27.

Affirmed.